**David R. STALLARD, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. A–91–CA–954.**

United States District Court, W.D. Texas, Austin Division.

Nov. 5, 1992.

David R. Stallard, pro se.

Cynthia E. Messersmith, Dept. of Justice, Dallas, Tex., for the U.S.

## ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 2 day of October, 1992, came on to be heard and considered the Plaintiff David R. Stallard's Motion for Summary Judgment filed May 28, 1992, and Defendant United States of America's Motion for Partial Summary Judgment filed June 19, 1992. Stallard is a lawyer and appeared pro se and the United States of America appeared through counsel. Having considered the motions, the relevant pleadings, and the parties' argument, the Court denies Defendant United States of America's Motion for Partial Summary Judgment and grants Plaintiff David R. Stallard's Motion for Summary Judgment.

### Background

Stallard filed suit for a refund of federal tax penalties pursuant to Internal Revenue Code (I.R.C.) § 7422 and for the release of federal tax liens related to the penalties. He contends he is not liable for the penalty because the IRS failed to properly assess and notice the penalty. The United States responds that the IRS properly noticed and assessed Stallard, and the only question left for trial is whether Stallard is liable for the assessment.

The record is unclear, but the United States alleges that Stallard was somehow involved with J & E Petroleum Corporation in the first part of 1982. As an employer, J & E Petroleum Corporation was required to collect and pay trust fund taxes to the IRS. Trust fund taxes are income taxes and an employee's share of FICA which are withheld from the employee's wages. The United States alleges that J & E Petroleum did not pay its trust fund taxes for the tax period ended March 31, 1982. The United States further alleges that Stallard was a "responsible person;" a person responsible for making sure that the IRS received the trust fund taxes. The United States, therefore, seeks to impose a penalty against Stallard for failing to pay the trust fund taxes for the tax period ended March 31, 1982.

On January 16, 1986, Stallard received a notice from the IRS stating that it proposed to assess a $41,947.00 penalty pursuant to I.R.C. § 6672 for Stallard's failure to collect, account for and pay over trust fund taxes for J & E Petroleum Corporation. The letter directed Stallard to pay the assessment if he agreed with it or to contact the individual listed on the letter if he disagreed and had additional information to support his case. It also informed him he could appeal the IRS decision.

A "Proposed Assessment of 100 Percent Penalty" (Department of the Treasury—Internal Revenue Service Form 2751) was attached to the letter. It detailed the amount of the penalty and listed each tax period for which a penalty was proposed. It listed the tax periods ended March 31, 1982, and June 30, 1983, as the tax periods for which the IRS was proposing to assess a penalty, and proposed a $41,947.00 penalty for the tax period ended March 31, 1982, and no ($0.00) penalty for the tax period ended June 30, 1983.

Stallard was surprised to receive the proposed assessment because he did not think any taxes were owed. He cooperated fully with the IRS and even voluntarily agreed to extend the statutory deadline from April 15, 1986, to December 31, 1990, for the IRS to make an assessment for the March 31, 1982 quarter.

Attempting to clear up the matter, Stallard gave all the information he had regarding the two quarters in question to an IRS agent in Houston. He telephoned her several times and even traveled to Houston in March of 1986. He was not able to provide much documentation for the information he provided because all of J & E Petroleum's records had been subpoenaed by the Harris County District Attorney in its investigation of the former President/CEO of J & E Petroleum. He did, however, provide whatever documentation he had and told her everything he knew. At the conclusion of his trip to Houston, the IRS agent stated she was recommending that he not be assessed for either of the quarters. Stallard left Houston believing the matter was resolved; little did he know it was only beginning.

More than two years later, on June 13, 1988, Stallard received an IRS notice that he was being assessed a penalty. The Notice stated that the IRS charged Stallard a penalty under I.R.C. § 6672 for failure to pay trust fund taxes as a "responsible person." The Notice identified Stallard as the liable party, stated $41,947.44 was due, and demanded payment. The Notice identified June 30, 1983, as the tax period.

Stallard sent the IRS Houston office a letter on June 22, 1988, requesting an administrative hearing. He received a computer reply stating that his request had been forwarded to the IRS district office and that someone would be contacting him soon, but no one from the IRS ever did.

Stallard then attempted to call the IRS agent in Houston that he had spoken with and met in 1986 to request an administrative hearing. After several calls, he finally got her, but she said that it was too late for an administrative hearing or appeal and he "would just have to deal with the IRS collection division."

On July 5, 1988, Stallard received another notice from the IRS, this time a "Final Notice" which threatened enforcement proceedings if the IRS did not receive full payment within 10 days. This notice, like the January 16, 1986 notice listed the tax period ended June 30, 1983 as the tax period in question.

On July 6, 1988, Stallard again sent a letter requesting a hearing with IRS officials. This time, however, he sent the letter the IRS Service Center in Austin. It apparently did not matter where he sent it, because he received the same computer reply that his request had been forwarded to the district office and that someone with the IRS would contact him. True to form, no one did.

Under the threat of imminent enforcement proceedings, Stallard contacted the local IRS collection office. He explained his situation to an agent and, for the fourth time, requested an administrative hearing. Despite his diligent efforts, he was denied a hearing.

Having tried to no avail for 2½ months to get the IRS to consider his case and under the imminent threat of enforcement proceedings, Stallard concluded seeking redress in Federal Court was the only way he was going to clear up this matter. So, on August 28, 1988, he paid $100.00 of the assessment and filed a refund claim with the IRS. The IRS denied his refund claim on September 14, 1988 and, on the same day, filed a Federal tax lien in Dallas County, Texas. The tax lien and the letter denying the refund claim both identified the tax period ended June 30, 1983, as the applicable tax period.

Proceeding with his attempt to clear up the matter, Stallard filed a refund action in Federal District Court on November 1, 1988. He filed a motion for summary judgment. In response, the IRS admitted it had made a mistake in assessing a penalty for the tax period ended June 30, 1983 and admitted Stallard had no penalty liability for that period. It confessed judgment stating it had intended to assess a penalty for the tax period ended March 31, 1982, and it was preparing a new assessment and notice for penalties owed for that period which it would attempt to collect administratively. The court granted Stallard's motion for summary judgment and ordered the IRS to refund the $100.00 plus statutory additions.

An attorney with the Department of Justice, Tax Division informed Stallard that a new assessment would be made in 6–8 weeks. However, Stallard did not receive and has not received notice of a new assessment.

The IRS did not refund the $100.00 or release the tax lien. Instead, beginning in May, 1989, it used the $100.00 plus other monies owed to Stallard in its possession to set-off the tax penalty allegedly owed for the tax period ended March 31, 1982. The total of the set-offs is $259.08.

On April 16, 1990, Stallard filed another claim with the IRS, this time requesting a refund of the $259.08 the IRS set-off.

The IRS responded by filing another tax lien on May 10, 1989, in Dallas County, Texas, against Stallard. The lien was iden-

tical to the previous tax lien (September 14, 1988), with the exception that it identified the tax period ended March 31, 1982, as the applicable tax period.

Stallard again contacted the IRS by telephone and letter attempting to resolve the matter. These attempts, like his previous attempts were to no avail. The IRS offered no assistance in resolving the matter. Meanwhile, he had two Federal tax liens on his credit report which thwarted his attempts to get credit.

On July 4, 1991, Stallard sent a letter to the District Director of Internal Revenue. In the letter, he requested, under I.R.C. § 6325, that certificates of release be issued with respect to the two Federal Tax Liens. The IRS refused to release the liens and they are both still filed and in force.

Having tried the diplomatic and civilized route, Stallard once again decided his only hope of resolving the matter was to proceed to Federal Court. He filed a refund claim with the IRS on April 16, 1990. He called the IRS several times regarding the claim, but the IRS refused to return his calls and has yet to respond to his refund claim.

On December 16, 1991, Stallard filed the present suit "in an effort to clear up this matter once and for all." He requests a refund the $259.08 set-off plus interest, release of the tax liens, and costs.

*Finally,* on February 10, 1992, the IRS executed a "Certificate of Assessment and Payments." The form identifies Stallard as the taxpayer and purports to certify a "100% Penalty on: J & E Petroleum Inc., 911 Walker St. Suite 407, Houston, TX." The Certificate shows a balance of $47,-596.26 as of April 15, 1990. The Certificate listed the tax period ended March 31, 1982 as the applicable tax period and the assessment date as June 13, 1988. The Certificate is signed by Janette Fluedinger, Manager, Certification Unit of the Austin, Texas office of the IRS.

Stallard did everything in his power to clear up and conclude this matter before filing this suit and long before the statutory period to assess the penalty expired on

December 31, 1990. He contacted the IRS, informed them that he thought a mistake had been made, provided all the information he had, and requested a hearing to clear up the matter on at least four different occasions. The IRS, however, refused to cooperate, refused to communicate and refused to follow its own procedures and requirements. It did not contact Stallard regarding an administrative hearing as it said it would on at least two separate occasions, it refused to grant an administrative hearing, and it refused to even review Stallard's case, forcing Stallard to file a refund claim with the IRS and subsequently a refund suit in Federal court to correct the IRS mistake. Had the IRS contacted Stallard, granted a hearing, or even reviewed his claim, it should have (the Court cannot say "would have" given the gross ineptitude the IRS has displayed in this case) discovered its mistake and corrected the problem. Instead, Stallard was forced to expend extra time, effort and resources to correct the IRS mistake. The IRS also wasted valuable court time by not reviewing Stallard's case when it was brought to its attention. The IRS demonstrated a total lack of respect for the taxpayers, the very people it should be trying to help. Here we have a taxpayer who is trying to clear up a potential tax liability and doing everything within his power to assist the IRS, including filing two separate lawsuits in United States District Court, and the IRS refuses to be of any assistance.

### Discussion

█ Internal Revenue Code (I.R.C.) § 6672 provides generally that any person required "to collect, truthfully account for, and pay over" trust fund taxes who willfully fails to do so or willfully attempts to avoid payment shall be liable for penalties. However, a tax penalty must be properly assessed and the taxpayer properly noticed before the penalty is enforceable. I.R.C. §§ 6203, 6303 and 6671(a); *See also, Sage v. United States*, 908 F.2d 18, 21 (5th Cir. 1990). Furthermore, assessment and notice must be completed within the time permitted by the statute of limitations.

*See, Brafman v. United States*, 384 F.2d 863, 865 (5th Cir.1967).

Stallard contends the IRS did not comply with the statutory requirements for assessment or notice within the statute of limitations, as extended by the waiver, and therefore, he is not required to pay the penalty.

### Notice

I.R.C. § 6303 provides "Where it is not otherwise provided by this rule, the Secretary shall, as soon as practicable, and within 60 days, after making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." The accompanying federal regulation, Treasury Regulation § 301.6303-1, provides the notice shall identify the individual liable for the unpaid tax, state the amount and demand payment.

█ The "Notice of Penalty Charge" complies with the requirements of I.R.C. § 6303 and Treasury Regulation § 301.6303-1. It identifies Stallard as the party liable for payment of the tax, states $41,947.44 is due, and demands payment. Stallard contends, however, there is an additional requirement that the notice correctly identify the proper tax period for which the IRS demands payment.

In *Sage v. United States*, 908 F.2d 18 (5th Cir.1990), the taxpayer contended he was not liable for I.R.C. § 6700 penalties because, among other arguments, "the notice of assessment was invalid because it did not indicate the years in which the activity allegedly occurred, and thus, failed to provide 'fair notice' of the activity sought to be penalized." *Sage*, 908 F.2d at 20. The taxpayer was correct in that the notice did not indicate the year in which the activity allegedly occurred. It did, however, comply with the literal requirements of I.R.C. § 6303 and Treasury Regulation § 301.6303-1. In disagreeing with the taxpayer and holding that the notice was sufficient, the Court distinguished between penalties resulting from specific acts or transactions and penalties applicable to a discrete time period. The Court determined that in cases, such as Sage's, where the

penalties resulted from specific acts or transactions, the notice is sufficient if it complies with the literal requirements of § 6303. Alternatively, and relevant to this case, the court, noting that a technical error will not invalidate a § 6303 notice, held that if the taxpayer has actual notice of the conduct the IRS seeks to penalize, it is irrelevant whether the notice contains the period in which the prohibited conduct allegedly occurred. The Court stated, Sage

"knew at all times what conduct the IRS sought to penalize and he, too, filed a refund suit armed with that knowledge. Sage, therefore, undoubtedly possessed actual notice of the conduct at issue here. Further, where notice of assessment and demand for payment is at issue (as is here) rather than the time-specific statutory notice of deficiency, there is even more reason to hold that actual notice should suffice.... Sage utterly fails to meet the government's argument head on and offers no reason for his position that a taxpayer with actual notice of the conduct under assessment should, nonetheless, be permitted to thwart the government because it failed to tell him what he already knew."

*Sage*, 908 F.2d at 22–23.

The same reasoning applies to § 6672 penalties. If the taxpayer has actual notice of the tax period for which the IRS claims a penalty is due, it is irrelevant whether the § 6303 notice identifies that period. The notice Stallard received identified Stallard as the liable individual, stated the amount due and demanded payment, thereby complying with the literal requirements of § 6303 and Treasury Regulation § 301.6303–1. Like Sage, Stallard knew what tax period the IRS sought penalties and filed a refund suit. Stallard does not deny that he knew the IRS sought penalties for the tax period ended March 31, 1982. In fact, he admits in his affidavit, attached to his motion for summary judgment, that he knew as of April 11, 1989, that the "assessment was intended for the quarter ended March 31, 1982." He, there-

fore, had actual notice, and the notice is sufficient even thought it did not identify the tax period.

### Assessment

I.R.C. § 6201 requires the Secretary of the Treasury to assess all penalties which have not been paid. Section 6203 provides, "The assessment shall be made by recording the liability in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of assessment."

Treasury Regulation § 301.6203–1 [1] provides "The assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.... The date of the assessment is the date the summary record is signed by an assessment officer. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period if applicable, and the amounts assessed."

Neither § 6203 nor Treasury Regulation § 301.6203–1 provides any guidance when a tax period is "applicable" and must be included in the summary record or the supporting records. However, Trust fund taxes are assessed quarterly. It is, therefore, undeniable that the taxable period is "applicable" and must be contained in the summary record of assessment or the supporting records and furnished to the taxpayer upon request.

Defendant presented four documents to the Court that it contends, when read together, satisfy the requirements of § 6203 and § 301.6203–1. These four documents are: the summary record of assessment,

---

**1.** Treasury Regulation § 301.6203–1 has the same force as a statute. *Brafman v. United* *States*, 384 F.2d 863, 866 (5th Cir.1967).

the "Proposed Assessment of 100 Percent Penalty" (Form 2751), the "Certificate of Assessment and Payments" (Form 4340), and the "Request for 100–Percent Penalty Assessment" (Form 2749). The United States insists that the "Notice of Penalty Charge" (Form 8489) does not constitute the summary record of assessment or supporting records; "this document is merely to put the taxpayer on notice that the penalty has been assessed and to demand payment." Additionally, the United States does not contend that either of the "Notice of Federal Tax Lien Under Internal Revenue Laws" filed against Stallard are the summary record of assessment or supporting records.

A) *Summary Record of Assessment*

■ Defendant submitted a "Form 23C" which it asserts is a summary record of assessment. It is dated June 13, 1988, and was signed by an assessment officer. Other than the assessment officer's signature, it does not contain any of the § 6203 or § 301.6203–1 requirements. It does not identify the taxpayer, identify the character of the liability assessed, identify the tax period, or state the amount of the assessment. Defendant admits, "It is a summary of assessments made by one service center that have [been] posted to the Internal Revenue Service's main computer for one day. No individual assessment is shown on a 23C; it only shows totals for the service center for each class of tax." Therefore, unless the supporting records satisfy the statutory requirements, there is no evidence that the IRS made a valid assessment against Stallard for the tax period ended March 31, 1982, before the extended statute of limitations expired on December 31, 1990.

B) *Supporting Records*

1) *"Certificate of Assessment and Payments" (Form 4340)*

■ The "Certificate of Assessment and Payment" presented to the Court reflects that the IRS assessed Stallard a "100% penalty" on June 13, 1988. The Certificate identifies Stallard, as the taxpayer to be assessed, by name, address and social security number. It also reflects June 13, 1988, as the date the IRS claims it assessed Stallard, reflects the character of the liability (100% penalty), identifies the tax period, and states the amount assessed. In sum, it provides all the specific information required by I.R.C. § 6203 and Treasury Regulation § 301.6203–1. Ordinarily, the "Certificate of Assessment and Payments" is presumptive proof of a valid assessment. *See e.g., Gentry v. United States,* 962 F.2d 555, 558 (6th Cir.1992); *United States v. Chila,* 871 F.2d 1015, 1017–1018 (11th Cir. 1989), *cert. denied,* 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989); *Brafman v. United States,* 384 F.2d 863, 867 (5th Cir. 1967); *United States v. Dixon,* 672 F.Supp. 503, 506 (M.D.Ala.1987), *aff'd,* 849 F.2d 1478 (11th Cir.1988). However, for the reasons stated below, the Court does not believe the presumption arises in this case.

In *Brafman v. United States,* the taxpayer contended she was not liable for penalties because the United States had not complied with the requirements of I.R.C. § 6203 and Treasury Regulation § 301.-6203–1. The assessment officer had not signed the assessment certificate. The Court quoting *United States v. Lehigh,* 201 F.Supp. 224, 234 (W.D.Ark.1961), stated, "Neglect to comply with [the procedures outlined in I.R.C. § 6203 and Treasury Regulation § 301.6203–1] may entail consequences which the neglecting party must be prepared to face, whether such party be the taxpayer or the Government." *Brafman,* 384 F.2d at 868. The Court held, "Since the assessment certificate in this case was not signed by the proper official, as prescribed by the applicable Treasury Regulation, within the statutory period after the filing of the estate tax return, this suit for collection of any deficiency is barred by the statute of limitations." *Brafman,* 384 F.2d at 868. The basic message of *Brafman* is that the IRS must strictly comply with I.R.C. § 6203 and Treasury Regulation § 301.6203–1 and it must do so within the statutory period, or there is not a valid assessment.

In this case, the "Certificate of Assessments and Payments" was prepared and

executed on February 10, 1992; subsequent to the filing of the lawsuit and, more importantly, subsequent to December 31, 1990, the date the extended statute of limitations expired. If the Court accepts this as presumptive proof that a valid assessment occurred or as any evidence that a valid assessment occurred, the statute of limitations becomes meaningless. Therefore, a "Certificate of Assessment and Payments" prepared and executed after the expiration of the statute of limitations is no evidence that a valid assessment occurred.

2) *"Proposed Assessment of 100 Percent Penalty" (Form 2751) and "Request for 100–Percent Penalty Assessment" (Form 2749)*

■ The "Proposed Assessment of 100 Percent Penalty" and the "Request for 100–Percent Penalty Assessment" both reflect that the IRS intended to assess Stallard a 100 percent penalty for the tax period ended March 31, 1982. However, these documents were prepared and executed before June 13, 1988, the date of the alleged assessment, and therefore, are not any evidence that the IRS actually assessed Stallard a 100 percent penalty for the tax period ended March 31, 1982, on June 13, 1988.

■ In sum, the IRS refused to follow the I.R.C. and its own regulations and, under the circumstances of this case, demonstrated gross and unjustifiable incompetence. Stallard did not "lay behind the log" waiting for the limitations period to expire and then claim no valid assessment had occurred. He in fact did everything within his power to help the IRS clear up and conclude this matter. He continuously pointed out the IRS' mistake to the IRS on numerous occasions before the expiration of the extended limitations period, even going so far as to file suit in Federal Court. Nevertheless, despite help from Stallard, the IRS refused to execute any document between the date of the assessment and the date the statute of limitations expired reflecting that the IRS made a 100 percent penalty assessment against Stallard for the tax period ended March 31, 1982. All the IRS had to do was prepare the "Certificate of Assessment and Payments" between the

time of the assessment and the time the statute of limitations expired; a period of more than 18 months. Had it done so, it would have presumptive proof of a 100 percent penalty assessment. Its failure to do so may well cost the taxpayers $41,-947.44 in unpaid tax penalties.

Since there is no evidence that the IRS assessed Plaintiff a 100 percent penalty for the tax period ended March 31, 1982, before the statute of limitations expired December 31, 1990, Plaintiff is entitled to summary judgment.

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED.

IT IS ORDERED that Defendant's Cross–Motion for Partial Summary Judgment is DENIED.

## JUDGMENT

BE IT REMEMBERED on the 2 day of October, 1992, came on to be heard and considered Plaintiff David R. Stallard's Motion for Summary Judgment filed May 28, 1992, and Defendant United States of America's Motion for Partial Summary Judgment filed June 19, 1992. Plaintiff is a lawyer and appeared pro se and the United States of America appeared through counsel. Having considered the motions, the relevant pleadings, and the parties' argument, the Court denied Defendant United States of America's Motion for Partial Summary Judgment and granted Plaintiff David R. Stallard's Motion for Summary Judgment, and enters the following judgment:

IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff recover $259.08 from Defendant plus interest at 3.13% interest a year from April 11, 1989 and all costs for which let execution issue.

IT IS ORDERED that the Internal Revenue Service release its lien against Stallard for the tax period ended June 30, 1983 in the amount of $41,947.44, filed September 22, 1988 in Dallas County in volume 88185 on page 2463.

IT IS ORDERED that the Internal Revenue Service release its lien against Stallard for the tax period ended March 31, 1982 in

the amount of $41,947.44, filed September May 10, 1989 in Dallas County in volume 89091 on page 899.