United States Court of Appeals,

Fifth Circuit.

No. 92-8706,

Summary Calendar.

David R. STALLARD, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Jan. 31, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM.

Defendant-Appellant the United States of America ("the government") seeks to uphold an assessment of a penalty tax under 26 U.S.C. § 6672 against Plaintiff-Appellee David R. Stallard for nonpayment of federal taxes withheld from employees. Stallard paid a nominal sum on this tax, then brought the instant case in federal district court to claim a refund and to remove two federal tax liens based on this assessment. The district court granted summary judgment for Stallard, concluding that the Internal Revenue Service (the "IRS") failed to assess the penalty tax within the applicable prescriptive period.

We conclude that the IRS did assess the tax timely, but that the IRS assessed the tax for the wrong tax period. Because the time for an assessment based on the correct tax period has now run, we conclude that the IRS cannot correct its error. Consequently, we affirm the judgment of the district court, albeit we do so on different grounds.

I

FACTS AND PROCEEDINGS

Bureaucratic ineptitude and indifference are all too common in our age; sometimes, though, this ineptitude and indifference have untoward consequences for the bureaucracy. This is such a case.

In 1982 J & E Petroleum Co. failed to remit income taxes and FICA taxes collected from its

employees (the "trust fund taxes") for the tax period ending March 31, 1982. Stallard was involved with J & E Petroleum in some capacity,[1] and the IRS eventually sought to impose a penalty against him as a "responsible person" under § 6672 of the Internal Revenue Code for this nonpayment of taxes.

Four years later, in January 1986, Stallard received a notice from the IRS stating that it proposed to assess him $41,947 in penalties under § 6672 for nonpayment of the trust fund taxes due. This notice indicated that the penalty was being imposed for the tax quarters ending March 31, 1982 and June 30, 1983, although a zero amount was listed for the later period.

Stallard cooperated with the IRS and even voluntarily agreed to extend from April 15, 1986 to December 31, 1990 the statutory deadline for the IRS to make an assessment. Stallard gave all the information that he had regarding the two quarters in question to an IRS agent in Houston.[2] After telephoning and meeting with Stallard, the IRS agent stated in March 1986 that she was going to recommend that he not be assessed for either quarter. Unfortunately for Stallard, this was only the beginning of his journey into a bureaucratic netherworld.

More than two years later, on June 13, 1988, the IRS entered an assessment against Stallard, using its Form 23C Assessment Certificate. The IRS regulations require that this entry be made on a summary record of assessments,[3] of which Form 23C qualifies, as it is a summary of all assessments made in a particular district on a particular date. Contemporaneous with this entry, the IRS mailed Stallard a Notice of Penalty Charge. This notice stated that Stallard was being assessed a civil penalty for the tax period ending June 30, 1983—the period for which the IRS had indicated a "zero" deficiency back in January 1986.

Stallard requested an administrative hearing from the Houston office by letter in June 1988.

---

[1]Stallard has challenged by a motion for summary judgment the threshold issue whether the IRS validly assessed the penalty tax. Consequently, the record has not been developed on the relationship between Stallard and J & E Petroleum.

[2]Much of the documentation was unavailable because the Harris County District Attorney had subpoenaed the records of J & E Petroleum. These records were subpoenaed as part of an investigation of the former President-CEO of J & E Petroleum.

[3]Treas.Reg. § 301.6203.1.

He received a computer reply stating that his request had been forwarded to the IRS district office and that someone would be contacting him soon. Stallard waited but was never contacted, either by phone or by mail. Stallard then attempted to contact the IRS agent in Houston with whom he had spoken previously. Upon finally reaching this agent, Stallard was informed—ominously as it turned out—that it was too late for an administrative hearing or appeal and that he "would just have to deal with the IRS collection division."

In July 1989, Stallard received a "Final Notice" from the IRS, threatening enforcement if the IRS did not receive full payment within ten days. This notice—like the earlier Notice of Penalty Charge—listed the tax period ending June 30, 1983 as the tax period in question. Upon receiving this Final Notice, Stallard immediately fired off a letter requesting a hearing with IRS officials. Perhaps because he believed that he could reach a responsible official in another location, Stallard addressed this letter to the IRS Service Center in Austin. This change was to no avail, as Stallard received the same computer generated response that he had received in response to his earlier letter: his request had been forwarded to the district office and someone would be contacting him soon. True to form, no one ever contacted Stallard.

Trying a different tack, Stallard contacted the IRS collection office. He explained the situation to an IRS agent and—for the fourth time—requested a hearing. Once again, his efforts were to no avail—the agent denied his request.

Stallard concluded that the only way he was going to be able to obtain redress was to bring this matter to federal court. In August 1988, he paid $100 of the assessment and filed for a refund. Not surprisingly, on September 14, 1988, the IRS denied his refund claim, then immediately imposed a federal tax lien against Stallard in Dallas County, Texas. Continuing the fixation on June 30, 1983, both the letter denying the refund and the federal tax lien identified that date as the last day of the applicable tax period.

Stallard filed his first complaint in federal court in November 1988. In response to Stallard's motion for summary judgment, the government admitted that the IRS had made a mistake in assessing a penalty for the period ending June 30, 1983. In the words of the government:

> It is the position of the United States that [Stallard] has trumped up a lawsuit to put at issue a period for which he has no tax liability. [Stallard] paid $100.00 towards his "liability" for the quarter ending June 30, 1983—for which he has no liability—then sued for a refund and moved for summary judgment. Indeed, [Stallard] has stated that he would oppose a counterclaim of the United States to put at issue the period for which he does have an outstanding liability.

As Stallard indicated he would oppose any counterclaim for an assessment based on the correct tax period—the quarter ending March 31, 1982—the government stated that the "IRS is preparing a new assessment and notice for the March quarter, which it will then seek to collect administratively." The government ending by conceding that Stallard was entitled to his motion for summary judgment, which the district court granted in April 1989.

No new assessment was ever prepared. No new notice was ever sent. Instead, the IRS used the $100 plus other monies in its possession that were owed to Stallard to set-off the tax penalty allegedly owed for the tax period ending March 31, 1982. When Stallard requested a refund, the IRS responded by filing another tax lien against him, this one in May 1989 (the original lien had never been lifted). Having apparently learned a lesson from the earlier litigation, however, the IRS in this lien finally identified the correct tax period, i.e., the one ending March 31, 1982.

The ever-persistent Stallard tried once again to resolve this matter at the administrative level. And once again, the IRS refused to grant a hearing or to award any relief. Stallard therefore filed another refund claim in April 1990; the IRS refused to return calls or to otherwise respond regarding this claim.

Left with no other option, Stallard returned to federal court and filed the instant suit in December 1991. In February 1992, the IRS executed a Certificate of Assessments and Payments ("Form 4340"). As the government readily concedes, this form was prepared to document its claim in the instant case. The Form 4340 identifies Stallard as the taxpayer and purports to certify a 1007 penalty tax due on J & E Petroleum, Inc. The balance as of April 15, 1990 is listed as $47,596.26 and the assessment date is listed as June 13, 1988. Finally—and not surprisingly given the earlier litigation—the Form 4350 lists the period ending March 31, 1982 as the applicable tax period.

The district court granted summary judgment in favor of Stallard. According to the district court, filing only the summary notice of assessment—which contains only the total assessments made

in a particular district on a particular date—within the limitation period, was insufficient. Rather, all documentation required by the treasury regulations—which includes the identification of the taxpayer, the character of the liability assessed, and the taxable period, if applicable—must be executed before the limitation period expires. As the IRS failed to provide this documentation timely, the district court concluded that the assessment was invalid and accordingly entered summary judgment for Stallard.[4] The government timely appealed.

## II

## DISCUSSION

A. *Background*

Section 6672(a) of the Internal Revenue Code provides that when a person who is required to withhold and pay over trust fund taxes willfully fails to do so, he is liable for a penalty equal to the total amount of the unpaid taxes.[5] This penalty is separate and distinct from the liability imposed on the employer to remit the trust fund taxes.[6] The penalty is imposed on the "responsible person," that is, the person who 1) was under a duty to collect and pay over the taxes, and 2) willfully failed to do so.[7]

Before imposing liability under § 6672, the IRS must properly notify the responsible party and must properly assess the penalty against such party.[8] Stallard concedes on appeal that he received adequate notice, but challenges the validity of the assessment. The regulation governing assessments, Treasury Regulation § 301.6203-1, provides that:

The assessment shall be made by an assessment officer signing the summary record of

---

[4] *Stallard v. United States,* 806 F.Supp. 152, 159-60 (W.D.Tex.1992).

[5] 26 U.S.C. § 6672(a).

[6] *Cash v. United States,* 961 F.2d 562, 565 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 492, 121 L.Ed.2d 430 (1993). The IRS, however, collects the tax only once—either from the employer or from the responsible party. *Id.* Therefore, the penalty due by the responsible party is abated to the extent that the employer made payments. *Id.*

[7] *E.g., Barnett v. IRS,* 988 F.2d 1449, 1453 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993); *Raba v. United States,* 977 F.2d 941, 943 (5th Cir.1992).

[8] *See* 26 U.S.C. §§ 6203, 6303, and 6671(a).

assessment.  The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment....  The date of the assessment is the date the summary record is signed by an assessment officer.[9]

If the summary record is properly supported through a Form 4340, the assessment contained in that summary record is considered presumptively valid;  the taxpayer must produce evidence to the contrary to rebut this presumption.[10]  The assessment itself must be made within three years of the filing of the return giving rise to the liability that is the subject of the assessment in question.[11]  In the instant case, Stallard extended the limitation period to December 31, 1990.

The district court held that the IRS failed to assess the penalty tax before the statute of limitations expired.  The district court concluded that our opinion in *Brafman v. United States*[12] requires that *all* provisions of Treasury Regulation § 301.6203-1 must be met within the limitation period.[13]  Although the summary record of assessment on Form 23C was prepared timely, the supporting document, Form 4340—which provided the information identifying the taxpayer, the character of the tax, and the applicable tax period as required by § 301.6203-1—was not prepared until February 10, 1992, more than one year after the extended limitation period expired.

As conceded by Stallard, though, the district court erred by reading *Brafman* too broadly. We held in *Brafman* that the "assessment certificate" must be timely signed by the appropriate official; but the certificate we were referring to in that opinion was the summary record of assessment named in § 301.6203-1.[14]  That holding is consistent with § 301.6203-1, which provides that "the assessment shall be made by an assessment officer signing the *summary record* " and "[t]he date of assessment is the date the *summary record* is signed by an assessment officer."  In contrast, to extend *Brafman*

---

[9]Treas.Reg. § 301.6203.1.

[10]*E.g., United States v. McCallum,* 970 F.2d 66, 71 (5th Cir.1992).

[11]*See* 26 U.S.C. § 6501(a).

[12]384 F.2d 863, 865 (5th Cir.1967).

[13]*Stallard,* 806 F.Supp. at 158-59.

[14]*See, Brafman,* 384 F.2d at 867.

to require that the supporting record must also be prepared within the prescriptive period would place *Brafman* in direct conflict with the plain language of § 301.6203-1.[15]

B. *The Issue: Does § 6672 Have an Applicable Tax Period?*

Stallard contends that although the district court erred in its reasoning, it reached the right result.[16] Specifically, he argues that the presumption of validity that attached to the assessment because of the documentation provided by the supporting record, Form 4340, has been rebutted by the IRS's own documents and by admissions made in the instant case. Stallard maintains that these documents and admissions conclusively prove that the assessment made on Form 23C on June 13, 1988 was made for the wrong tax period: the one ending June 30, 1983. Relying on the mandatory language of § 301.6203-1, which states that "[t]he summary record, through supporting records, *shall* provide identification of ... the taxable period, if applicable,"[17] Stallard concludes that the June 13, 1988 assessment is invalid for failure to identify the correct taxable period.

The government attempts a preemptive strike by arguing that the § 6672 penalty tax does not have a "taxable period"—hence the taxable-period requirement in § 301.6203-1 is "not applicable." The government reasons that, because a responsible person is liable for the total liability accumulated while he was a responsible party—instead of being liable for discrete and separate amounts based on individual tax periods—the liability under § 6672 does not pertain to particular tax periods. The government declares that the IRS's various cites to the period ending June 1983—which were premised on taxes owed by another taxpayer (i.e., J & E Petroleum), for another type of tax (i.e., corporate taxes)—were merely "reference device[s] used for administrative convenience." Thus, according to the government, the June 13th assessment in the instant case need not identify any taxable period to be valid. We find this argument to be patently specious.

---

[15]*Cf., McCallum,* 970 F.2d at 68 (observing that an assessment is made when the assessment officer signs the Form 23C summary record).

[16]As Stallard correctly notes, we may affirm the judgment of the district court on grounds other than those relied on by the district court. *E.g., Chauvin v. Tandy Corp.,* 984 F.2d 695, 697 (5th Cir.1993); *Federal Deposit Ins. Co. v. Laguarta,* 939 F.2d 1231, 1240 (5th Cir.1991).

[17]Treas.Reg. § 301.6203-1 (emphasis added).

A taxpayer is liable for a penalty under § 6672 if, and only if, that person is a "responsible party."[18] That taxpayer is a responsible party if he was both 1) under a duty to collect and pay over the taxes, and 2) willfully failed to do so.[19] But liability under § 6672 does not exist "in the air"—such liability is imposed only on those persons responsible for particular taxes of a particular entity. And we are satisfied that both logic and precedent mandate a temporal requirement for § 6672: such liability is imposed only on those who were responsible parties for particular tax periods.

We have consistently presumed such a requirement when seeking to determine whether a person has the "effective power"—and hence the duty—to pay the trust fund taxes due. To determine whether a person is liable because he has the power to pay those taxes without also considering whether he held that power in the particular tax periods in which the deficiency accrued would be nonsensical.[20]

Likewise, we have imposed a temporal requirement on the "willfulness" prong of § 6672: If a person is a responsible person both before and after withholding tax liability accrues (and liability accrues per tax period), then that person has a duty to pay over unencumbered funds acquired after the trust fund obligation becomes payable. Failure to do so when there is knowledge of the obligation constitutes willfulness.[21] Once again, to speak of willfulness under § 6672 without considering the tax periods during which the person in question was "responsible" would be nonsensical.

Requiring the assessment to refer to the correct taxable period is also necessary to preserve accuracy in assessments under § 6672. The instant case aptly illustrates this need, as the government admits that the "reference" period used here referred to the wrong taxes, owed by the wrong

---

[18]A "responsible party" is one who is responsible for either collecting, truthfully accounting for, or paying over the trust fund taxes. *E.g., Barnett,* 988 F.2d at 1453 n. 6; *Raba,* 977 F.2d at 943 n. 5.

[19]*E.g., Barnett,* 988 F.2d at 1453; *Raba,* 977 F.2d at 943.

[20]*See, e.g., Barnett,* 988 F.2d at 1454-55 (analyzing whether the taxpayer had the "effective power" to pay the trust fund taxes during the periods they accrued); *Raba,* 977 F.2d at 943-45 (same); *Turnbull v. United States,* 929 F.2d 173, 178-79 (5th Cir.1991) (same); *Gustin v. United States, IRS,* 876 F.2d 485, 492 (5th Cir.1989) (same); *Wood v. United States,* 808 F.2d 411, 415 (5th Cir.1987) (same).

[21]*E.g., Barnett,* 988 F.2d at 1458 (collecting cases).

taxpayer, for the wrong tax period. And accurately ascertaining the correct tax period is more than a mere "technicality." Once again, the instant case illustrates this proposition, given that Stallard has been subjected to the concurrent imposition of two tax liens: one based on the tax period ending March 31, 1982, and the other based on the tax period ending June 30, 1983. Thus, even though—as admitted by the government in court—neither Stallard nor J & E Petroleum Co. ever owed trust fund taxes for this latter period, he has been subjected to an additional tax lien based solely on this later period for no other reason than that the IRS could not, would not, or simply did not bother to ascertain accurately the correct tax period.

Finally, we emphasize the narrowness of our determination today. As the government correctly notes, § 6672 liability applies to the total amount due; of course, the "total amount due" for a responsible party is predicated on accruals for each tax period in which that taxpayer is a responsible party. Nonetheless, an assessment based on the last period for which that taxpayer is a responsible party would be sufficient as that assessment would be for a particular tax period in which that taxpayer is liable, and that assessment would accurately reflect that an accrued amount is due for that period. A properly executed Form 4340 referring to the tax periods making up this accrued liability would, in such a case, invoke the "presumption of validity" as to that assessment, subject, of course, to the evidence at trial as to when that taxpayer was a responsible party.[22]

Thus, our holding today would not necessarily affect the typical case in which the government assesses a taxpayer for the last of several periods for which that taxpayer had § 6672 liability. In the instant case, though, Stallard was assessed for but one tax period, one for which he owed nothing. The predicate for that assessment—a reference to a tax period for which Stallard was liable—was missing.

---

[22]The Ninth Circuit's recent decision in *Purcell v. United States,* 1 F.3d 932 (9th Cir.1993) is not to the contrary. In *Purcell* the court concluded that a reference in a certificate of assessment to the last period for which trust fund taxes were admittedly owed—when properly supported by more detailed records indicating each taxable period covered by the assessment—did not limit the taxpayer's liability to only that last period referenced. *Id.* at 940-41. Indeed, instead of supporting the government's assertion that tax periods are irrelevant, *Purcell* appears to undermine it as *Purcell* appears premised on the notion that tax periods *do* matter—the government simply met it burden of proving that the assessment was for more than the last period referred to in one document.

C. *Summary Judgment and Judicial Admissions*

As its last line of defense, the government argues that Stallard has failed to show the absence of a genuine issue of material fact as to whether the Form 23C assessment was for the wrong period.[23] We conclude that the government's various admissions made in the instant litigation of this matter interdict this argument.

In its memorandum supporting its request for summary judgment and opposing Stallard's motion, the government stated that the assessment at issue was for the period ending June 30, 1983.[24] The government also offered into evidence as Government Exhibit No. 4 the declaration of Sandra K. Davis, an advisor with the Special Procedures Branch of the IRS. Davis stated unequivocally and under penalty of perjury that the tax period used to assess taxes against Stallard was the period ending June 30, 1983.[25] Moreover, Government Exhibit C—offered to certify that the Form 23C was a true copy—stated that the Form 23C assessment against Stallard was for the tax period ending June 30, 1986. We observe in passing that these admissions were warranted as they were consistent with

---

[23]The government also continues to argue that the "presumption of validity" accorded Form 4340 is still applicable in the instant case. When considered in light of the evidence and the government's admissions discussed above, this is an incredible assertion.

[24]The government stated: "On June 13, 1988, the 100-percent penalty was assessed against [Stallard]. The records of the IRS originally reflected this assessment as being for the period ended June 30, 1983, in accordance with IRS procedure of recording the 100-percent penalty assessments by reference to the last tax period of a multi-period assessment."

As noted above—and as conceded by the government—Stallard's potential liability arises out of only one tax period: the one ended March 31, 1982. Thus we do not have a case in which Stallard is being assessed based on the last tax period of a multi-period assessment. Rather, Stallard has been assessed for a tax period for which he owes nothing.

[25]Davis's sworn statement was as follows:

As a routine practice, the period referenced for assessment of the 100-percent penalty is normally the last tax period reflected on Forms 2751 and 2749. In regard to J & E Petroleum, Inc., an unpaid balance due existed for the tax period ending June 30, 1983, and thus, *that tax period was initially used to assess the civil penalty* even though none of that unpaid balance was included in the 100-percent penalty assessment.

We note that "initially used to assess" refers to the assessment at issue in the instant case, as there has been only one assessment against Stallard.

the multitude of other documents produced by the IRS contemporaneously with and immediately following the assessment—all of which listed June 30, 1983 as the applicable tax period.[26]  Under the overwhelming, consistent totality of these circumstances, the government is bound by its admissions.[27]

III

CONCLUSION

Bureaucratic ineptitude and indifference—coupled with judicial admissions made as part of a confused litigation strategy—have combined to produce an untenable argument by the government: that the assessment of a penalty tax under § 6672 need not refer to particular tax periods to be valid. We reject this argument as unsound, contrary to precedent, and contrary to the strictures of the IRS's own regulations.  Consequently, we conclude that the IRS's failure here to assess taxes under § 6672 for the proper tax period renders that assessment invalid.

We further conclude that—since the time for assessing the penalty tax has long since expired—the IRS can no longer correct its error.  Therefore, the judgment of the district court ordering recovery of taxes paid and release of the tax liens against Stallard must stand, and is accordingly,

AFFIRMED.

---

[26]In chronological order, these documents are:

June 13, 1988—(the date of the assessment) IRS Form 8489 "Notice of Penalty Charge."

July 4, 1988—IRS Form 8126 "Final Notice."

September 14, 1988—IRS Form 668(Y) "Notice of Federal Tax Lien Under Revenue Laws."

September 14, 1988—IRS Letter 906 disallowing Stallard's claim.

[27]*Cf., American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226-27 (9th Cir.1988) (reviewing precedent of various circuits and concluding that a court has discretion whether to treat admissions contained in an attorney's brief as binding); *see also* 10A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2723 (1983) (observing that admissions contained in a motion in opposition to summary judgment may be used to determine whether a genuine issue of material fact exists).