**In re COLTER, INC., Debtor.**

**In re GLISSADE, INC., Debtor.**

**In re MOUNTAINEER CORPORATION, Debtor.**

**In re PEAKVIEW INCORPORATED, Debtor.**

**In re GOLDTONE, INC., Debtor.**

**In re TGP, INC., Debtor.**

**In re BRIDGER, INC., Debtor.**

**Bankruptcy Nos. 84 B 04564 M–84 B 04570 M.**

United States Bankruptcy Court, D. Colorado.

Oct. 25, 1985.

## ORDER ON REQUEST OF CONSOLIDATED CAPITAL INCOME TRUST FOR A SUPER–PRIORITY ADMINISTRATIVE EXPENSE CLAIM

JOHN F. McGRATH, Bankruptcy Judge.

On July 15, 1985, Consolidated Capital Income Trust (CCIT) filed this request for payment of certain unpaid adequate protection payments as a super-priority administrative expense. The Debtors objected to the request, and after hearing on September 24, 1985, the request was taken under advisement.

The relevant facts are not in dispute and are as follows: The Debtors are related companies which together own eight apartment complexes. By deed of trust recorded May 2, 1983, CCIT holds a security interest in the real property, securing a note in the original principal amount of $15,000,000. In addition, CCIT holds an assignment of rents and leases, also recorded May 2, 1983. The Debtors defaulted on the note on or about June 15, 1984, and filed voluntary petitions under Chapter 11 of the Bankruptcy Code on or about September 21, 1984. By order dated October 23, 1984, 46 B.R. 510, this Court determined that the rental income from the real property was cash collateral of CCIT within the meaning of 11 U.S.C. § 363(a) giving CCIT the right to object to its use by the Debtors absent adequate protection. After that order, the Debtors and CCIT entered into a stipulation regarding Debtors' use of the cash collateral. That stipulation provided, inter alia, that the Debtors were to make monthly adequate protection payments to CCIT according to a schedule set forth in the stipulation. CCIT was required to make certain payments on liens senior to that of CCIT, to the extent that it received the adequate protection payments from the Debtors. CCIT further had the right to, but was not obligated to, make those payments even if it did not receive the adequate protection payments from the Debtors. To the extent that any such payments by CCIT were not reimbursed by the adequate protection payments from the Debtors, CCIT was granted a super-priority claim. Should the Debtors fail to make the adequate protection payments when due, CCIT was given the right to withdraw its consent to the use of cash collateral. By order dated December 27, 1984, on a motion for relief from stay filed by CCIT, this Court determined that the value of the property was roughly equivalent to the debt to CCIT; that the property was not deteriorating but that, in fact, its condition was steadily improving; and that, with adequate protection payments of $75,000 per month, CCIT was adequately protected. Finding also that the property was necessary for an effective reorganization, the Court denied the motion for relief from stay. By order dated January 30, 1985, the Court additionally conditioned the continuation of the automatic stay on the Debtors' timely and complete payments to CCIT required by the cash collateral stipulation. The Debtors performed until May of 1985, when their May adequate protection payment was $10,000 short. The June payment of $110,000 was not paid. On June 11, 1985, CCIT sought relief from stay to foreclose and seek appointment of a receiver, which was granted on June 12, 1985. CCIT took possession of the building on

June 13, 1985. On June 12 and June 13, 1985, the Debtors issued a number of checks in payment of certain administrative claims, including the payment of attorney's fees to the attorneys for the Debtors, leaving insufficient cash in the Debtors' estate to pay CCIT the $120,000 in adequate protection payments remaining unpaid.

CCIT now claims that it is entitled to a super-priority with regard to the $120,000 in unpaid adequate protection payments, pursuant to 11 U.S.C. § 507(b). The Debtors object, making two arguments. First, the cash collateral stipulation gives CCIT a super-priority only to the extent CCIT has made payments to certain senior lien holders which were not reimbursed through the adequate protection payments. CCIT presented no evidence regarding the payments it made to the senior lienors. The Debtors contend that CCIT is bound by this stipulation and cannot seek super-priority with regard to any other claims. Second, the intent of the code and the provisions regarding adequate protection and the right to a super-priority claim should adequate protection fail limit CCIT to a super-priority to the extent it has suffered an actual, out of pocket loss, and only to the extent that the loss was caused by the continuation of the automatic stay. CCIT has presented no evidence regarding its out of pocket loss, nor has it tied that loss to the continuation of the stay. In addition, the Debtors argue that any super-priority claim of CCIT should not prevent the payment of allowed interim fees and expenses to the Debtors' attorneys, citing *In re Callister*, 15 B.R. 521 (Bankr.Utah 1981).

██ 11 U.S.C. § 507(b) grants a secured creditor a super-priority, superior to all other administrative priority claims set forth in 11 U.S.C. § 507(a)(1), where the debtor in possession provides adequate protection to the creditor and, notwithstanding that protection, the creditor has an administrative claim arising from, inter alia, the debtor's use of its cash collateral or the stay of the creditor from acting against the property. Thus, in order to have a super-priority claim, the creditor must first have an administrative priority claim, as defined in 11 U.S.C. § 507(a)(1), and that claim must have arisen due to some failure in the adequate protection.

An administrative claim under 11 U.S.C. § 507(a)(1) is any administrative expense allowed under 11 U.S.C. § 503(b), plus any fee or charge assessed against the estate under chapter 123 of title 28 of the United States Code, inapplicable here. In this case, CCIT can hold an administrative claim under 11 U.S.C. § 503(b)(1)(A) only for the actual, necessary costs and expenses of preserving the estate. As the Debtors used CCIT's cash collateral to pay other administrative costs, that use was tied to expenses necessary to preserve the estate and would give CCIT an administrative claim.

Under 11 U.S.C. § 507(b) CCIT will hold that administrative claim only to the extent that adequate protection has failed. Under 11 U.S.C. § 361, CCIT was entitled to adequate protection only to the extent that the continuation of the stay and the Debtors' use of the cash collateral resulted in a decrease in the value of CCIT's interest in the property. Thus, the language of the Code apparently limits CCIT's super-priority claim to the actual loss it has incurred due to a decrease in its interest in the property during the pendency of the bankruptcy. The amount of the unpaid adequate protection payments do not necessarily correspond to CCIT's actual loss.

A number of courts have examined the appropriate method of determining the extent of a § 507(b) super-priority. The most recent located by this court is *In re Becker*, 13 B.C.D. 549, 51 B.R. 975 (Bankr.Minn. 1985). In that case, the debtors and a secured creditor entered into a stipulation requiring certain adequate protection payments as a condition of the continuation of the automatic stay. The debtors defaulted and the creditor obtained relief from stay to repossess the collateral, certain farm equipment. The creditor resold the collateral and claimed the deficiency as a super-priority claim under § 507(b). The court found that it was not necessary for the

parties to bargain for a super-priority claim for the creditor to be entitled to one under § 507(b). The Court further found that the creditor was entitled to a super-priority claim for its actual loss, rather than the unpaid adequate protection payment, and the actual loss was the depreciation in value during the bankruptcy.

Most courts have allowed a super-priority claim to the extent that the stay in bankruptcy has actually reduced the value of the collateral, less any adequate protection payments made to the creditor, notwithstanding the terms of a stipulation regarding adequate protection. See *In re Mutschler*, 45 B.R. 494 (Bankr.N.D.1984); *In re Nordyke*, 43 B.R. 856 (Bankr.Ore. 1984). See also *In re Callister*, 15 B.R. 521 (Bankr.Utah 1981), in which the same formula was used, but the creditor was limited to the unpaid adequate protection payments when the actual loss exceeded them.

This Court finds that, under the terms of the cash collateral stipulation, CCIT is entitled to a super-priority claim to the extent it made payments to senior lienors that were not reimbursed by the Debtors. In addition, under 11 U.S.C. § 507(b), CCIT is also entitled to a super-priority claim to the extent it has suffered an actual decrease in the value of its interest in the collateral due to the automatic stay and the Debtors' use of its cash collateral, less any adequate protection payments made by the Debtors. As CCIT has only requested a super-priority of $120,000, to the extent, if any, actual loss exceeds that amount, the balance will be treated as a general administrative claim.

The Debtors have argued that, even if CCIT is entitled to a super-priority claim, the Debtors' attorneys are entitled to their allowed interim fees and expenses, citing *In re Callister*, supra. This Court prefers the reasoning of *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2nd Cir.1984), which reaches the opposite conclusion. Section 507(b) creates a super-priority claim which is superior to all other administrative claims, including attorney's fees. This Court cannot ignore the statutorily created priorities, regardless of how unjust the result may appear. Thus, in this case, to the extent that CCIT is entitled to a super-priority claim, all other administrative expenses that have been paid, including attorney's fees, are inferior and must be recaptured, pro rata, from all recipients in order to satisfy CCIT's claim.

WHEREFORE, IT IS ORDERED that CCIT is entitled to a super-priority claim to the extent that it has made payments to the senior lienors that have not been reimbursed by the Debtors and to the extent it has suffered an actual decrease in the value of its interest in the collateral due to the stay of its right to foreclose on the real property and the Debtors' use of its cash collateral, less adequate protection payments received, up to a ceiling of $120,000. An evidentiary hearing will be held on December 27, 1985 at 8:30 a.m. to determine the extent of CCIT's actual loss; and it is

FURTHER ORDERED that the super-priority claim of CCIT, if any, is superior to all other administrative claims, and a pro rata recapture of those administrative claims that have been paid will be ordered to the extent necessary to satisfy CCIT's super-priority claim.