859 F.2d 137
 19 Collier Bankr.Cas.2d 933
 In re BLEHM LAND & CATTLE COMPANY, Debtor.
TRAVELERS INSURANCE COMPANY, Creditor-Appellant,
v.
AMERICAN AGCREDIT CORP., Creditor-Appellee,
M.E. Koontz, Trustee-Appellee.
 No. 87-1317.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 29, 1988.
 
 Elizabeth J. Greenberg (Peter J. Lucas, with her, on the brief), of Sherman & Howard, Denver, Colo., for creditor-appellee.
 Garry Appel (Gregory L. Williams and Jane E. Frey, on the brief), of Rothgerber, Appel, Powers & Johnson, Denver, Colo., for creditor-appellant.
 Before ANDERSON and BALDOCK, Circuit Judges, and BURCIAGA, District Judge.*
 PER CURIAM.
 
 
 1
 This case is an appeal from an order of the district court affirming the bankruptcy court's denial of the appellant's application for a superpriority administrative expense under 11 U.S.C. Sec. 507(b) (1982). The appellant contends that the district and bankruptcy courts erred by holding that it was not entitled to such a superpriority expense because it failed to obtain court approval of the Memorandum of Agreement out of which the expense arose, because the agreement constituted a compromise or settlement for which court approval was necessary, and because it violated the provisions of Sec. 361(3) of the Bankruptcy Code. We find the appellant's arguments persuasive, and we reverse and remand this case for findings in accordance herewith.
 
 
 2
 The facts of this case are fully set out in the district court's decision at 71 B.R. 818 (D.Colo.1987). In this decision, the district court concurred with the bankruptcy judge's ruling that the Memorandum of Agreement, entered into by the appellant, Travelers Insurance Company, and the trustee for the debtor, M.E. Koontz, was an agreement to provide adequate protection to Travelers in the form of periodic cash payments. In exchange, Travelers agreed to permit the trustee to use certain property out of the ordinary course of business, which was secured by Travelers' first deed of trust. Because it was an adequate protection agreement, the district court ruled that Travelers and the trustee were required to obtain court approval of the agreement to comply with the due process requirements of notice and hearing pursuant to 11 U.S.C. Secs. 362(d), 363(b), and 364(b). Id. at 823.
 
 
 3
 The district court also concurred with the bankruptcy court's conclusion that the Memorandum of Agreement constituted a compromise or settlement of a claim, and that, under Bankruptcy Rule 9019(a), such settlement agreements may only be approved by the court after notice and a hearing. Id. It therefore affirmed the bankruptcy court's denial of Travelers' application for a superpriority administrative expense, concluding that the court was not bound to recognize the validity of the agreement due to Travelers' and the trustee's failure to comply with proper procedure for court approval. The court further concluded that, even if the correct procedure had been followed, the bankruptcy court properly refused to rule nunc pro tunc that the agreement constituted adequate protection, because the payments thereunder were excessive and because the agreement violated the provisions of Sec. 361(3) prohibiting adequate protection in the form of an administrative expense. Id. at 824-26.
 
 
 4
 In reviewing an order of the bankruptcy court, the appellate court applies the same standard as the district court: findings of fact by the bankruptcy court are to be set aside only if clearly erroneous and conclusions of law are subject to de novo review. In re Mullet, 817 F.2d 677, 678-79 (10th Cir.1987). In this instance, there are no contested issues of fact. The sole question before this court concerns the effect of Travelers' failure to seek explicit court approval of the Memorandum of Agreement on its application for a superpriority administrative expense. We conclude Travelers' and the trustee's failure to obtain court approval of the Memorandum of Agreement was not fatal to Travelers' application for a superpriority expense and that, in any event, the agreement was neither a compromise or settlement nor violative of Sec. 361(3).
 
 
 5
 We begin by examining the sections of the Bankruptcy Code which address the provision of adequate protection to creditors. Section 361 sets forth three nonexclusive methods by which adequate protection may be afforded to a creditor. One method is by "requiring the trustee to make a cash payment or periodic cash payments" to the creditor to offset any decrease in the value of the creditor's interest in its collateral occasioned by the automatic stay or use, sale or lease of the collateral other than in the ordinary course of business. 11 U.S.C. Sec. 361(1). Sections 362, 363, and 364 detail the instances in which the need for adequate protection might arise. They include damage to a creditor's secured interest as a result of the automatic stay, id. Sec. 362, the trustee's use, sale or lease of property of the estate (other than in the ordinary course of business) in which the creditor has an interest, id. Sec. 363, and the trustee's acquisition of unsecured debt by the grant of a senior or equal lien on property in which the creditor has a secured interest, id. Sec. 364.
 
 
 6
 Under Secs. 362, 363, and 364, it is clear that the creditor, in seeking relief from the stay, and the trustee, in using estate property out of the ordinary course or incurring unsecured debt, must give notice and obtain court approval before taking any action authorized by these sections. Id. Secs. 362(d), 363(b), 364(b). When a creditor affected by the proposed action objects, the court must then determine whether the interest of a secured creditor is adequately protected. Id. Secs. 362(d), 363(e), 364(d). However, the trustee or the debtor in possession, not the court, is the party required to provide or propose the particular means of adequate protection. In re Heatron, Inc., 6 B.R. 493, 494 (Bankr.W.D.Mo.1980); In re San Clemente Estates, 5 B.R. 605, 609 (Bankr.S.D.Cal.1980).
 
 
 7
 Contrary to the district court's statement that court approval of an adequate protection plan is always required by statute, 71 B.R. at 823, the Code is silent with respect to the necessity of court approval of an adequate protection plan when a creditor does not object to the protection being offered. Moreover, few, if any, courts have directly confronted this issue. The best-reasoned decision on this issue can be found in In re Callister, 15 B.R. 521 (Bankr.D.Utah 1981), aff'd sub nom. Ingersoll Rand Fin. Corp. v. Callister, 13 Bankr.Ct. Dec. 21 (CRR) (April 16, 1984), wherein the court addressed the issue of court approval of ex parte adequate protection stipulations. The court stated,
 
 
 8
 Stipulations raise another complex of problems. On one hand, they show cooperation between creditors and the estate which should be requited. They reduce costs otherwise incurred in litigation and permit a constructive allocation of resources. They lessen the judicial burden of administering the estate, an important principal of the Reform Act. On the other hand, most authorities have assumed that a court order under 11 U.S.C. Section 362(d)(1) is essential for relief under 507(b). These authorities may be incorrect since 507(b) speaks in terms of the trustee not the court providing adequate protection, and this is consistent with the legislative history to 361.
 
 
 9
 Id. at 531, 532 (citations omitted). However, the court in Callister was not forced to directly consider the issue of a noncourt-approved adequate protection agreement, as the stipulation in that case had already been approved by the court. Id. at 532 n. 30; see also, In re Engle, No. 87-4135 (E.D.Pa. Dec. 30, 1987) (1987 WL 32706) (permitting subsequent court approval of ex-parte adequate protection agreement); In re Mutschler, 45 B.R. 494 (Bankr.D.N.D.1984) (wherein creditor given superpriority expense despite the fact that its stipulation was court-approved without notice and hearing to other creditors). Other courts, following the lead of In re Callister, have addressed the effect of ex parte adequate protection agreements or stipulations, several of which have assumed such agreements were valid without further consideration. See, e.g., In re Becker, 51 B.R. 975, 980 (Bankr.D.Minn.1985); In re B & W Tractor Co., 38 B.R. 613, 617 (Bankr.E.D.N.C.1984); In re Bramham, 38 B.R. 459, 466 (Bankr.D. Nev.1984).
 
 
 10
 We concur with the court's conclusion in Callister that neither the Code nor its legislative history supports the interpretation that court approval of an ex parte adequate protection agreement is a prerequisite to a 507(b) expense. Such a rule would deprive the bankruptcy court of much-needed flexibility with respect to the administration of the bankruptcy estate. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 338-40, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295, 6296. But while such agreements are not presumptively invalid, neither should claims arising from them be automatically approved. On the contrary, ex parte adequate protection agreements should receive close scrutiny from the court. In particular, "[w]hen examining administrative claims arising from such agreements, the court should consider 1) whether the agreement is consistent with the intent and purpose of the Bankruptcy Code, 2) whether the conduct of the secured creditor has been inequitable, and 3) whether effecting the agreement would create an inequitable result." In re B & W Tractor Co., 38 B.R. at 617. When an ex parte adequate protection agreement is determined to be "too adequate," it should it be modified or set aside. Id. at 618; see also, In re Becker, 51 B.R. at 980.
 
 
 11
 In the instant case, the bankruptcy court denied Travelers' application for a superpriority administrative expense, finding that the Memorandum of Agreement was not in the nature of adequate protection, because there was "nothing pending at the time by which the trustee had to provide adequate protection ... [such as a] 362, 363, or 364 motion." We disagree. After Travelers had obtained a temporary restraining order to prevent the debtor from entering into the lease with E-VAP, Inc. to permit the construction of an oil field wastewater processing facility, the trustee entered into negotiations with Travelers. As a result of these negotiations, Travelers permitted the property encumbered by its deed of trust to be used for the E-VAP facility in exchange for certain payments from the income to be generated therefrom, as set out in the Memorandum of Agreement. Having reached this agreement, the trustee then filed a motion with the bankruptcy court seeking approval of the lease negotiated with E-VAP, which the court granted after notice and a hearing.
 
 
 12
 Had Travelers not negotiated the Memorandum of Agreement, and instead objected to the trustee's proposed use of the property, it certainly would have been entitled to adequate protection under Sec. 363(e), and the trustee would have been required to propose a plan of adequate protection for court approval. See In re B & W Tractor Co., Inc., 38 B.R. at 617 ("secured creditors are entitled to some form of adequate protection in every Chapter 11 case"). We therefore conclude that Travelers is entitled to court consideration of the amount of adequate protection, if any, to which it may now claim by virtue of the trustee's use of its collateral out of the ordinary course of business and the failure of its agreement for adequate protection. We note, however, that prior court approval of adequate protection agreements is the more prudent and preferred approach.
 
 
 13
 Given that Travelers' failure to seek court approval of its adequate protection agreement was not fatal to its application for a superpriority expense, the question remains as to the amount of adequate protection Travelers could rightfully claim was owed. A number of courts have examined the appropriate method of determining the extent of a Sec. 507(b) superpriority. The majority allow a superpriority claim to the extent that the stay in bankruptcy has actually reduced the value of the collateral, notwithstanding the terms of a stipulation regarding adequate protection. In re Becker, 51 B.R. at 980; In re Mutschler, 45 B.R. 494 (Bankr.D.N.D.1984); In re Nordyke, 43 B.R. 856, 860 (Bankr.D.Or.1984). Some courts have, however, ruled that the stipulation controls the upper limit of expenses which can be recovered. In re Colter, Inc., 53 B.R. 958, 961 (Bankr.D.Colo.1985); In re Callister, 15 B.R. at 533. In any event, the adequate protection provided must not substantially exceed that to which the secured creditor is entitled. In re Becker, 51 B.R. at 980; In re B & W Tractor Co., 38 B.R. at 617. "A creditor should not be rewarded for ... greed in negotiating a stipulation for adequate protection that overstates entitlement." In re Nordyke, 43 B.R. at 860.[1] Although the bankruptcy court stated that it felt that Travelers was seeking to recover more money via the Memorandum of Agreement than it would otherwise be entitled, it made no specific findings to this effect. We therefore remand this case to the bankruptcy court for an evidentiary determination as to the proper amount of adequate protection payments to which Travelers is justly entitled.
 
 
 14
 In addition to ruling the Memorandum of Agreement was deficient as an adequate protection agreement, the bankruptcy and the district courts found that the agreement constituted a settlement or compromise. Under Bankruptcy Rule 9019, a settlement or compromise agreement between the trustee and a party must be approved by the court, after notice and hearing, to be enforceable. In In re Bramham, 38 B.R. 459 (Bankr.D.Nev.1984), the court considered the distinction between an adequate protection agreement and a settlement or compromise and the degree to which, as a matter of due process, notice and hearing are required. Ruling that a stipulation providing adequate protection to a creditor is more accurately viewed simply as a "vindication of a statutory right," and not a settlement or compromise in the usual sense, the court stated that only when "something more than adequate protection" of an allowed secured claim is contemplated, such as the grant of an additional lien on unsecured property or the advance of additional unsecured debt, is notice and hearing absolutely required. Id. at 466.
 
 
 15
 American AgCredit argues that the Memorandum of Agreement effected a settlement of the controversy regarding Travelers' receipt of the temporary restraining order. However, Travelers had already succeeded in protecting its rights by obtaining the protective order before negotiations to permit the E-VAP lease began, and its agreement to permit the E-VAP lease in exchange for periodic payments was simply the vindication of those rights by means of an adequate protection agreement. Id. There was no dispute as to validity of Travelers' underlying claim or its right to take action to protect that claim, and, therefore, no compromise or settlement accomplished by the Memorandum of Agreement. Id.
 
 
 16
 Finally, we disagree with the district and bankruptcy courts that the terms of the Memorandum of Agreement were violative of Sec. 361(3) of the Bankruptcy Code. That section was enacted to prevent the trustee from providing a creditor with an administrative expense as a means of adequate protection. See, e.g., In re Yale Express System, Inc., 384 F.2d 990, 992 (2d Cir.1967) (a pre-Code case, wherein the court suggested that a grant of an administrative priority would be an acceptable form of adequate protection). In drafting this provision, Congress was concerned that the estate would not have sufficient property to pay administrative expenses in full, thus making such adequate protection valueless. See S. Rep. No. 989, 95th Cong., 1st Sess. 54, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5840. Evidencing the importance with which it viewed the concept of adequate protection, Congress did provide in Sec. 507(b) that, when adequate protection fails, the creditor is entitled to a superpriority administrative claim, above all other regular administrative claims. Moreover, adequate protection agreements which explicitly state that the failure to make payments thereunder will give rise to a superpriority expense have been held to be valid agreements, In re Colter, Inc., 53 B.R. 958 (Bankr.D.Colo.1985), as well as those which fail to anticipate Sec. 507(b) treatment, In re Mutschler, 45 B.R. at 496.
 
 
 17
 The agreement in this case provided that Travelers was to receive certain periodic payments in exchange for its agreement to permit the E-VAP lease. This method of adequate protection is clearly authorized by Sec. 361(1). Even had the agreement explicitly stated that the trustee's failure to make the minimum annual payments would result in a superpriority claim, such language would not violate the provisions of the Code. We see no evidence that the intent of the Memorandum of Agreement was to provide Travelers with adequate protection in the form of a simple administrative claim under Sec. 503(b). We therefore conclude that the district and bankruptcy courts erred in finding that the Memorandum of Agreement violated Sec. 361(1).
 
 
 18
 The judgment of the United States District Court for the District of Colorado is REVERSED and REMANDED, and the court is instructed to remand the cause to the United States Bankruptcy Court for the District of Colorado for proceedings consistent herewith.
 
 
 19
 The mandate shall issue forthwith.
 
 
 
 *
 Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 Of course, to the extent Travelers' claim against the estate is undersecured, it is precluded from recovering interest payments as compensation for the delay in foreclosing on its collateral caused by the automatic stay. United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates Ltd., --- U.S. ----, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)